People v Johnson (2025 NY Slip Op 50372(U))

[*1]

People v Johnson

2025 NY Slip Op 50372(U)

Decided on March 24, 2025

Supreme Court, Kings County

Cesare, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 24, 2025
Supreme Court, Kings County

The People of the State of New York,

against
Travis Johnson, Defendant.

Ind. No. 72521-2024

For Defendant: Joelle B. Ryu, Esq.
For the People: Amanda Schaefer, Esq.

Heidi C. Cesare, J.

Defendant moves to challenge the district attorney's certificate of good faith discovery compliance (CoC) on the ground that various items of discovery were not disclosed before the CoC was filed. The principal issue addressed in this decision is whether the district attorney must disclose the police body-worn camera (BWC) recordings and activity logs of three police witnesses who did not witness the charged shooting but whom the district attorney will call at trial to identify defendant as the perpetrator in a surveillance photograph or video.
I. Background
Defendant is accused of attempted murder and assault for allegedly shooting and injuring another person on March 28, 2024. The district attorney filed a CoC and statement of readiness for trial on September 18, 2024. The district attorney filed a supplemental CoC and statement of readiness for trial on March 12, 2025.
In the Notice/Disclosure Form (NDF), the district attorney gave defendant notice of intent to call three so-called Mosley witnesses at trial to identify defendant as the perpetrator depicted in surveillance photos or video (see NDF [2] [B]). The Mosley witnesses are police officers who did not witness the crime, but the district attorney claims that each of them is sufficiently familiar with defendant's appearance to identify him in a photograph or video (see id.). Two of the officers, Amanda Alarcon and Monica Phekoo, are familiar with defendant from a traffic stop conducted on March 27, 2024. The third officer, Christopher Rodriguez, is familiar with defendant from a previous arrest (see id.).
The discovery given to defendant before September 18, 2024, did not include the BWC recordings of Officers Alarcon and Phekoo from the traffic stop, although photographic stills from each officer's BWC recording from the traffic stop were introduced into evidence at the grand jury (see Ryu aff in supp of mot at ¶ 13). The discovery also did not include the activity logs of the three officers for the day of their prior interactions with defendant. The BWC recordings of each officer were not disclosed until on or about March 12, 2025 (see Supp CoC [*2]dated March 12, 2025; EDDS Doc ID: VVSZGB). The district attorney explained the late disclosure of those recordings by stating in the supplemental CoC that they "were unavailable to the People" (id.). As of March 12, 2025, the district attorney had requested the activity logs of each officer but not yet received them (see memorandum of law for district attorney at 16).
II. Discussion
The automatic discovery requirement applies to the BWC recordings and activity logs of the three Mosley witnesses. The admissibility of their identification testimony will depend on whether each witness "had sufficient contact with the defendant to achieve a level of familiarity that renders [their] lay opinion [identification testimony] helpful" to the jury (People v Mosley, 41 NY3d 640, 648 [2024] [cleaned up]). To make that determination, the trial court must inquire about the basis of each witness's prior familiarity "outside the presence of the jury in a separate hearing or voir dire" (id. at 650). The BWC recordings and activity logs of each officer are pertinent to defendant's ability to participate in the inquiry and challenge the admissibility of any such testimony. The recordings and activity logs are, therefore, related to the subject matter of the case against defendant (see CPL 245.20 [1]). The district attorney was required to exercise due diligence and make reasonable inquiries to obtain those materials and disclose them to the defense before filing a CoC (see id. § 245.50 [1]).
The district attorney did not exercise due diligence to obtain the BWC recordings and activity logs before filing the original CoC. The record does not support the district attorney's claim that the BWC recordings "were unavailable to the People" when the original CoC was filed. The district attorney is deemed to be in possession of police BWC recordings (see id. § 245.20 [2]), and the recordings are available to the district attorney merely for the asking. The district attorney even obtained stills from the BWC recordings of Officers Alarcon and Phekoo and entered them into evidence at the grand jury. The district attorney fails to say what efforts, if any, were made to obtain the recordings and activity logs before filing the original CoC. Under the circumstances, the original CoC, dated September 18, 2024, is deemed improper (see People v Bay, 41 NY3d 200, 212—213 [2023]).
This court addresses the remainder of defendant's discovery complaints to the extent necessary to ensure that the district attorney has complied with Criminal Procedure Law article 245. By now, the district attorney has disclosed to defendant the DD5 of Detective Vargas and the attachments to that DD5; all the surveillance video collected by the police during the investigation of this case; an E-copy of a traffic summons issued to defendant on March 27, 2024; and the names and case materials of the Night Watch and 63rd Precinct detectives involved in this case. The question of whether the belated disclosure of these items renders the CoC invalid is moot.
Next, defendant alleges the nondisclosure of reports made by the Emergency Medical Services Unit of the New York City Fire Department (EMS). However, the discovery requirement applies only to material "in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (CPL 245.20 [1]). Here, the EMS records were not in the possession, custody, or control of the district attorney before the CoC was filed.
This court credits the district attorney's allegation that this material was subpoenaed from the fire department on April 5, 2024, but not received from EMS before the CoC was filed on September 18, 2024 (see Schaefer aff in opp to mot at ¶ 6). The fire department is an independent city agency not under the control of the district attorney (see People v Borzon, 45 Misc 3d 1217[A], *8 [Sup Ct, Bronx County 2014] ["An EMS report, if it exists, is not . . . [*3]within the control of the District Attorney's Office; EMS has no duty to share any reports with the People, and the People lack authority to demand their production"]). And because the fire department is not a law enforcement agency, the EMS reports are not deemed to be in the possession of the district attorney under Criminal Procedure Law § 245.20 (2) (see People v Horton, 83 Misc 3d 1283[A], *3 [Sup Ct, Kings County 2024] ["As an initial matter, EMS is not a 'law enforcement agency' within the meaning of the CPL section 245.20(2)"]).
Disclosure of the EMS reports is not required on the ground that the district attorney has a statutory duty to "make a diligent, good faith effort" to locate and disclose discoverable "material or information . . . where it exists but is not within the prosecutor's possession, custody or control" (CPL 245.20 [2]). This duty does not require the district attorney to "obtain by subpoena duces tecum material or information which the defendant may thereby obtain" (id.). Here, defendant may obtain the EMS records by subpoena. Therefore, the district attorney was allowed to file a CoC before receiving the subpoenaed EMS reports. The district attorney must, however, expeditiously disclose those reports upon receiving them and file a supplemental CoC (see id. §§ 245.60; 245.50 [1], [1-a]).
Defendant's claim that the EMS reports are discoverable under Criminal Procedure Law § 245.20 (1) (j) was raised for the first time in his reply papers and is, therefore, not properly before this court (see People v Ford, 69 NY2d 775, 777 [1987]; People v Ayala, —AD3d&mdash, 2025 NY Slip Op 00749, *1 [4th Dept 2025]; People v Pointer, 233 AD3d 572, 573 [1st Dept 2024]; People v Brown, 217 AD3d 681, 682 [2d Dept 2023]).
In any event, this claim is without merit. In support of this claim, defendant cites People v Rahman (79 Misc 3d 129[A], *2 [App Term, 2d Dept, 2nd, 11th & 13 Jud Dists], lv denied 40 NY3d 1040 [2023]), a decision of the Appellate Term that is not binding upon this court (see People v Burgos, 37 Misc 3d 394, 409—410 [Sup Ct, NY County 2012]; People v Garcia, 21 Misc 3d 732, 737—739 [Sup Ct, Bronx County 2008]).
Moreover, this court disagrees with the conclusion reached in Rahman that EMS records are discoverable pursuant to Criminal Procedure Law § 245.20 (1) (j) when police summon EMS to provide treatment to a crime victim (see 79 Misc 3d 129[A], *2 [finding EMS records discoverable under CPL 245.20 (1) (j) "because EMS provided treatment to the complainant at the request or direction of the NYPD"]). As relevant here, this provision requires the district attorney to disclose "all reports . . . concerning physical or mental examinations . . . relating to the criminal action or proceeding which were made by or at the request of a public servant engaged in law enforcement activity" (id.). This provision arguably would make EMS records discoverable when the records were made at the request of the police, not when the records were made after giving medical treatment that was requested by the police. In addition, as noted already, the district attorney's duty to disclose is circumscribed by Criminal Procedure Law § 245.20 (2), which does not require the district attorney "to obtain by subpoena duces tecum material or information which the defendant may thereby obtain." Lastly, even if Rahman was correctly decided, the motion papers contain no allegations that the police in this case summoned EMS to provide medical treatment to the shooting victim (see People v Garcia, 80 Misc 3d 1020, 1022 [Crim Ct, Kings County 2023]). Thus, defendant is not entitled to discovery of the EMS reports under the authority of Rahman.
Defendant also alleges the nondisclosure of the attachment to a DD5 created by a Detective Michael Cioffi regarding his investigation of the criminal background of the shooting [*4]victim (see Ryu aff in supp of mot at ¶¶ 13, 20).[FN1]
As part of that investigation, the detective apparently checked various law enforcement databases for information about any criminal history of the shooting victim (see id. at ¶ 20). Defendant argues that the results of that investigation, which are contained in the attachment to the DD5, are discoverable (see CPL 245.20 [1] [e], [k] iv]).
In answer to this claim, the district attorney argues that disclosure of the victim's prior convictions, as reflected on his "rap sheet," satisfied the automatic discovery requirement (see CPL 245.20 [1] [p]). The district attorney states that the "background checks contain no information related to the instant matter" (memo of law for district attorney at 18).[FN2]
This court credits that statement and finds no violation of the discovery statute based on the nondisclosure of the results of that background check. Contrary to defendant's argument, the district attorney did not use an incorrect "materiality" standard to determine that this information was not discoverable (see Ryu aff in supp of mot at ¶ 21). For that reason, this court declines to order the district attorney to submit the results of that background check for in camera inspection.
Defendant alleges the nondisclosure of the audit trails for police BWC recordings. This court has ruled that the automatic discovery requirement applies to the Axon Evidence Audit Trail for each BWC recording provided as discovery (see People v Forderingham, 83 Misc 3d 1268[A], *2—*3 [Sup Ct, Kings County 2024]). The automatic discovery requirement does not, however, apply to the Axon Device Audit Trail and the Axon User Audit Trail (see id. at *3). Accordingly, within fifteen days of the date of this decision, the district attorney must provide defendant with the Axon Evidence Audit Trail for each BWC recording provided as discovery and file a supplemental CoC (see CPL 245.50 [1-a]).
Finally, defendant alleges the nondisclosure of the arrest report worksheet and the BWC recording and activity log of a Police Officer Chavarria. The district attorney represents that no arrest report exists, and that Police Officer Chavarria had no contact with this case and is not being called as a Mosley witness. This court credits those representations and finds no discovery violation based on defendant's allegations.
III. Conclusion
For the reasons stated above, this court finds that the CoC filed on September 18, 2024, was improper. As explained more fully above, the following items of discovery remain outstanding: the activity logs of Police Officers Alarcon, Phekoo, and Rodriguez, and the Axon Evidence Audit Trails of all police BWC recordings provided as discovery. The district attorney is reminded of the need to file a supplemental CoC after disclosing these items to the defense.
So ordered.
Dated: March 24, 2025
Brooklyn, NY
HEIDI C. CESARE, A.J.S.C.

Footnotes

Footnote 1:Paragraph 13 of the affirmation submitted in support of the motion identifies the author of the DD5 to be a Detective Paula, but the remainder of the affirmation and the district attorney's papers identify the author as Detective Michael Cioffi.

Footnote 2:The memorandum reads "the Defendant's rap sheet and background checks contain no information related to the instant matter," but the context of that statement leads this court to conclude that the district attorney was referring to the complainant rather than defendant.